IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| XIAORONG LAN, §<br>§<br>*Plaintiff,* §<br>§<br>vs. §<br>§<br>UNIVERSITY OF TEXAS AT SAN §<br>ANTONIO, DR. JUAN MANUEL §<br>SANCHEZ, ASSOCIATE DEAN, §<br>CARLOS ALVAREZ COLLEGE OF §<br>BUSINESS; AND DR. HARRISON LIU, §<br>PHD ADVISOR, CARLOS ALVAREZ §<br>COLLEGE OF BUSINESS, §<br>§<br>*Defendants.* § | SA-22-CV-00769-FB |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant the University of Texas at San Antonio's Motion to Dismiss Plaintiff's Third Amended Complaint [#22]. The District Court referred this case to the undersigned for all pretrial proceedings on July 27, 2022 [#8]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned will recommend the District Court grant in part and deny in part Defendant's motion as to Plaintiff's Title VII claims, decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against the individual Defendants, and dismiss these state-law claims without prejudice to refiling in state court.

**I.  Background**

Plaintiff Xiaorong Lan, proceeding *pro se*, initiated this action on July 19, 2022, by filing a motion to proceed *in forma pauperis* ("IFP") and several other motions, including a motion for

1

the appointment of counsel. On August 8, 2022, the undersigned granted the motion to proceed IFP, denied the motion to appoint counsel, and reviewed Plaintiff's proposed Complaint for frivolousness pursuant to 28 U.S.C. § 1915(e). Plaintiff's Original Complaint sued the University of Texas at San Antonio ("UTSA"), the Behavioral Intervention Team ("BIT") at UTSA,[1] Dr. Juan Manuel Sanchez (Associate Dean of the Carlos Alvarez College of Business), and Dr. Harrison Liu (Ph.D. Advisor) under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA") for race, national origin, gender, and age discrimination. Plaintiff's proposed Complaint also attempted to sue Defendants under 26 U.S.C. § 7206, a criminal statute related to fraud within the Internal Revenue Code, and referenced the Fifth and Fourteenth Amendment's Due Process Clause.

Plaintiff's proposed Complaint alleged that Plaintiff was employed as a research assistant and Ph.D. student at UTSA beginning in September 2019 as the only Chinese research assistant in her cohort and the eldest in the Ph.D. program. Plaintiff claimed that UTSA wrongly issued a BIT "discipline contract" against her, prohibiting her from working for or having any academic contract with Dr. Harrison Liu solely based on the fact that she was female and he male.

Plaintiff further complained that she was wrongfully terminated from her position at UTSA based on unsatisfactory performance on a comprehensive exam, after being subjected to discriminatory grading by Dr. Manuel Sanchez. According to Plaintiff, Dr. Sanchez told her "he would always put Chinese students at bottom of his list because of poor communication." Plaintiff alleged that, although she reported the discrimination to UTSA, UTSA failed to

---

[1] BIT is "a multidisciplinary team of UTSA staff and faculty responsible for identifying, assessing, and responding to concerns and/or disruptive behaviors exhibited by students, faculty, staff, and visitors who may present a risk of harm to themselves, members of the community, or the institution." *See* UTSA Behavioral Concerns Assistance, available at https://www.utsa.edu/bit/#:~:text=The%20Behavioral%20Intervention%20Team%20(BIT,to%20Othemselves%2C%20members%20of%20the (last visited April 18, 2023).

investigate her complaints.  Finally, Plaintiff's Complaint stated that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a Right to Sue Letter on July 6, 2022.  Plaintiff included a copy of the Right to Sue letter with her proposed Complaint.

In the order granting Plaintiff's motion to proceed IFP, the undersigned construed Plaintiff's Complaint as arising only under Title VII and the ADEA, as there is no private right of action under 26 U.S.C. § 7206, and Plaintiff failed to include any allegations in her Complaint that would support a cause of action under 42 U.S.C. § 1983 for violations of the Due Process Clause.  The undersigned further found that Plaintiff appeared to have exhausted her administrative remedies as to her employment claims and that her proposed Complaint asserted at least one non-frivolous claim.  However, the undersigned limited service of Plaintiff's Complaint, only authorizing service on UTSA, as Title VII and the ADEA do not provide for the individual liability of Dr. Sanchez and Dr. Liu or suits against UTSA teams, such as BIT.  The undersigned further recommended that the District Court dismiss BIT, Dr. Sanchez, and Dr. Liu from this lawsuit.  This report and recommendation remains pending before the District Court.

Several weeks after the Court docketed Plaintiff's Original Complaint and issued a summons for service on UTSA, Plaintiff filed an Amended Complaint (titled "Second Amended Complaint") [#13].  The Second Amended Complaint again named UTSA and Drs. Liu and Sanchez but removed BIT from the pleading.  This pleading asserted claims under Title VII and the ADEA and removed any reference to the Due Process Clause or criminal statutes.  Plaintiff also filed an objection to the undersigned's report and recommendation, arguing that Dr. Sanchez and Dr. Lui should not be dismissed from this lawsuit because they breached their duties as

educators in violation of the Texas Educators' Code of Ethics in grading her exam and in treatment of Plaintiff and other students [#14].

UTSA was served with process and filed a motion to dismiss the Second Amended Complaint. In response, Plaintiff, without seeking leave of Court, filed another Amended Complaint (titled "Third Amended Complaint") [#21].[2] UTSA has moved to dismiss the Third Amended Complaint as well (the motion currently before the Court). The Third Amended Complaint also names UTSA, Dr. Sanchez, and Dr. Lui as Defendants. The claims asserted in this pleading against UTSA are claims for race, color, gender, religion, and national origin discrimination and retaliation under Title VII. The Third Amended Complaint also alleges claims for "breach/negligence of duty" and making a "false statement and misrepresentation," which the undersigned construes as being asserted against Dr. Sanchez and Dr. Li. Plaintiff also references a hostile work environment, which the undersigned construes as a Title VII hostile work environment claim against UTSA. Plaintiff does not mention the ADEA in this pleading. Plaintiff's factual description of the basis of her claims reiterates her previous allegation that she was wrongfully terminated in her Ph.D. program due to discrimination. Although Plaintiff concedes she was terminated after she failed her comprehensive exam multiple times, Plaintiff contends she was scrutinized at a higher level for discriminatory reasons in her examinations.

The Court dismissed UTSA's first motion to dismiss as moot in light of the filing of Plaintiff's Third Amended Complaint, and Plaintiff filed a response in opposition to the second motion to dismiss as ordered by the Court [#25] and a renewed motion for the appointment of

---

[2] Because Plaintiff is *pro se* and UTSA has filed a motion to dismiss the Third Amended Complaint, the undersigned will not recommend striking the Third Amended Complaint. But Plaintiff is warned that no more amendments to her pleadings are allowed without first securing UTSA's agreement or leave of Court. *See* Fed. R. Civ. P. 15(a)(2).

counsel [#26].³  Plaintiff and UTSA have subsequently filed additional replies and responses to the pending motion to dismiss [#28, #29, #30].  UTSA's motion to dismiss the Third Amended Complaint is ripe for the Court's review.

### III.  Analysis of UTSA's Motion to Dismiss Third Amended Complaint

UTSA asks the Court to dismiss Plaintiff's claims for retaliation, discrimination, and a hostile work environment under Title VII on the basis that Plaintiff fails to state a claim upon which relief may be granted and all of Plaintiff's allegations occurring before August 19, 2021, are time-barred.  For the reasons below, the Court should grant UTSA's motion to dismiss Plaintiff's hostile work environment claim but deny the motion to dismiss Plaintiff's Title VII discrimination and retaliation claims.

UTSA's motion arises under Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).

---

³ The undersigned will enter a separate order on Plaintiff's motion to appoint counsel.

However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

**Employee Status.** For Plaintiff to bring a cognizable claim for employment discrimination under Title VII, she must allege that she was employed by UTSA. Plaintiff's Third Amended Complaint alleges that she was enrolled at UTSA in a Ph.D. program and served as an appointed graduate research assistant from September 1, 2019, until October 13, 2021, when she was terminated. (Third Am. Compl. [#21], at 4, 7.) Plaintiff further alleges that UTSA executed an employment contract with Plaintiff on August 9, 2021, for the 2022 academic year. (*Id.* at 4.) UTSA ask the Court to hold as a matter of law that Plaintiff, as a graduate research assistant, was not an employee of UTSA. The Court should decline to do so.

To determine whether an employment relationship exists within the meaning of Title VII, the Fifth Circuit applies a "hybrid economic realities/common law control test." *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). There are some circumstances in which courts have found a graduate research assistant to be an employee for purposes of Title VII. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234–35 (11th Cir. 2004) (applying economic-realities test to hold that plaintiff's lab work was performed as an employee of the university, rather than primarily for purposes of his graduate program, and collecting other cases finding same). Again, Plaintiff pleads that she was employed as a research assistant by UTSA; that she had an employment contract with UTSA; and that she was not merely a Ph.D. student. Plaintiff's pleadings are sufficient to state a claim that she was

employed by UTSA at this stage of the proceedings, where the Court is limited to considering Plaintiff's pleadings and cannot consider evidence to resolve factual disputes.

**Discrimination.** Plaintiff has stated a Title VII discrimination claim. To establish a prima facie case of discriminatory discharge under Title VII, Plaintiff must plead (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she was subject to an adverse employment action; and (4) that she was replaced by someone outside the protected class or that similarly situated employees outside of her protected class were treated more favorably. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

Plaintiff, as a Chinese woman, falls within a protected class and, sufficiently alleges two adverse employment actions—her termination from her research assistant position on October 13, 2021, and the subsequent denial of her request for reinstatement. Plaintiff's Third Amended Complaint concedes that her continuing employment was contingent on satisfactory academic performance, and Plaintiff twice failed her comprehensive exam, leading to her termination. (Third Am. Compl. [#21], at 4, 8.) Plaintiff has not identified any comparators outside of her protected class who also twice failed the comprehensive exam but were not terminated. However, Plaintiff does allege in her amended response[4] that other non-Chinese research assistants were subjected to more lenient testing standards, and so she alleges that this differential treatment was based on her national origin and resulted in her—and not their—termination. (Am. Response [#30], at 3–4.) And her failure of the exams was also the reason for denying her reinstatement. At the pleading stage, this is sufficient to state a prima facie Title VII

---

[4] Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, the undersigned considers the supplemental allegations in her amended response as if they were contained in her live pleading.

claim for national origin discrimination. But Plaintiff has not adequately pleaded differential treatment based on any other protected characteristic, so her Title VII claims for discrimination based on race, color, gender, and religion should be dismissed.

**Retaliation.** Plaintiff has also pleaded a plausible Title VII retaliation claim. A plaintiff establishes a prima facie case of retaliation by showing: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *LeMaire v. State of La.*, 480 F.3d 383, 388 (5th Cir. 2007). Under Title VII, a "protected activity" for the purposes of a retaliation claim includes any opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'n Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

Plaintiff alleges that she complained to UTSA regarding her belief that her exams were discriminatorily graded in November 2021, months after she was terminated from her research assistant position. (Third Am. Compl. [#21], at 8.) Plaintiff also alleges that she filed a complaint with the Department of Education's Office of Civil Rights on January 6, 2022, and a Charge of Discrimination with the EEOC on June 15, 2022. (*Id.* at 4.) UTSA argues Plaintiff's internal complaint to UTSA was not protected activity because it did not relate to her alleged employment, only alleged grading inaccuracies. Even assuming it was protected conduct, this complaint could not have caused her termination, as it occurred long after this adverse employment action.

Yet Plaintiff also specifically alleges that the denial of her request for reinstatement in March 2022 was an independent adverse employment action[5] and retaliation for her UTSA internal complaint and complaint to the Office of Civil Rights, both of which were made months before her reinstatement application was denied.  (*Id.* at 8.)

UTSA argues that the Court should reject this theory of Plaintiff's retaliation claim on the basis that she fails to allege that the decision to deny her reinstatement request was causally connected to any of these complaints relating to alleged discrimination because she asserts nothing more than the temporal proximity between these events.  However, the cases cited by UTSA in support of this argument are inapposite, as they are all cases in a summary-judgment posture involving plaintiffs who failed to produce any causation evidence, not cases regarding the sufficiency of the pleadings.  Moreover, Plaintiff specifically alleges that both Dr. Sanchez and Dr. Liu actively participated in the reinstatement decision, were aware of her internal grievance regarding alleged discrimination in the grading of her examinations, and denied her reinstatement request just months after she made her complaints.  (*Id.*)  Thus, UTSA's motion to dismiss Plaintiff's Title VII retaliation claim should be denied.

---

[5] UTSA argues that the denial of Plaintiff's request for reinstatement does not qualify as an adverse employment action for purposes of Title VII, arguing that the request only pertained to participation in her Ph.D. program and not her alleged employment as a research assistant.  At this stage of the proceedings, the undersigned cannot resolve this factual dispute,  and UTSA can re-urge this argument in its motion for summary judgment.  But even if the denial of reinstatement ultimately does not qualify as an adverse employment action for purposes of a Title VII national origin discrimination claim, it could plausibly qualify as such an action for purposes of a Title VII retaliation claim.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)  (holding that an adverse employment action in the context of Title VII retaliation is anything that would dissuade a reasonable worker from engaging in protected activity); *cf. McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (reiterating that only "ultimate employment decisions" such as hiring, firing, granting leave, promoting, and compensating constitute adverse employment actions for Title VII discrimination claims).

**Hostile Work Environment.** However, Plaintiff fails to state a plausible claim for a hostile work environment. To establish a prima facie hostile work environment claim under Title VII, a plaintiff must show (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999). UTSA argues that Plaintiff cannot show the fourth element of her prima facie case, and the undersigned agrees.

To constitute a hostile work environment affecting a term, condition, or privilege of employment, the harassing conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). The only allegation Plaintiff asserts regarding her working conditions related to her protected characteristics is her allegation that Dr. Sanchez told her "he would always put Chinese student at bottom of his list because of poor communication." (Third Am. Compl. [#21], at p. 4, 7, 9.) This comment is insufficient, without more, to amount to a severe or pervasive hostile work environment. Because Plaintiff fails to allege facts severe or pervasive enough to constitute a hostile work environment, the undersigned need not and has not considered UTSA's arguments regarding the failure to exhaust administrative remedies as to this claim and the applicability of the continuing-violations doctrine to the claim.

In summary, the Court should dismiss Plaintiff's Title VII claims against UTSA for hostile work environment and for discrimination based on race, color, gender, and religion but allow her Title VII national origin discrimination and retaliation claims to proceed.

### IV.  Remaining Claims against Individuals in the Third Amended Complaint

If the District Court accepts the undersigned's prior report and recommendation [#9], the only remaining claims in the Third Amended Complaint against Dr. Juan Manuel Sanchez and Dr. Harrison Liu are state-law claims of negligence or related to violations of the Texas Educators' Code of Ethics.  Even assuming Plaintiff is able to assert a state-law cause of action against Dr. Sanchez and Dr. Liu on these bases, the District Court should decline to exercise supplemental jurisdiction over these claims.  28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Plaintiff may refile these claims in state court.

### V.  Recommendation

After considering UTSA's motion, the responses and replies thereto, Plaintiff's pleadings, and the governing law, the undersigned hereby **RECOMMENDS** that the District Court **GRANT IN PART** Defendant the University of Texas at San Antonio's Motion to Dismiss Plaintiff's Third Amended Complaint [#22] and **DISMISS WITH PREJUDICE** Plaintiff's Title VII hostile work environment claim and her Title VII claims for discrimination based on race, color, gender, and religion.  The undersigned **recommends** that the District Court **DENY** UTSA's motion with regard to Plaintiff's Title VII national origin discrimination and retaliation claims.

If the District Court accepts the undersigned's prior report and recommendation [#9], the undersigned **recommends** the District Court decline to exercise supplemental jurisdiction over the state-law claims against Dr. Juan Manuel Sanchez and Dr. Harrison Liu for negligence and related to violations of the Texas Educators' Code of Ethics and **DISMISS** all state-law claims **WITHOUT PREJUDICE**.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of April, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE