IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

XIAORONG LAN,                          §
                                       §
            *Plaintiff*,               §
                                       §        SA-22-CV-00769-FB
vs.                                    §
                                       §
UNIVERSITY OF TEXAS AT SAN             §
ANTONIO,                               §
                                       §
            *Defendant*.               §

## REPORT AND RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation and Order concerns the following dispositive and non-dispositive motions: Plaintiff's Motion for Partial Summary Judgment [#67], Defendant the University of Texas at San Antonio's Motion for Summary Judgment [#83], Plaintiff's Motion for Summary Judgment [#84], Defendant the University of Texas at San Antonio's Motion to Strike [#91], and Plaintiff's Motions to Expedite the Case [#92, #93, #94].

The District Court referred this case to the undersigned for all pretrial proceedings [#8]. The undersigned therefore has authority to enter a recommendation on the parties' cross motions for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B) and an order on the motion to strike and motions to expedite pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, the undersigned will recommend the District Court deny Plaintiff's motions for summary judgment and grant Defendant's motion for summary judgment. The Court will also deny Defendant's motion to strike and dismiss as moot Plaintiff's motions to expedite [#92, #93, #94].

1

# I.  Background

Plaintiff Xiaorong Lan, proceeding *pro se*, initiated this action on July 19, 2022, against the University of Texas at San Antonio ("UTSA"), the Behavioral Intervention Team ("BIT") at UTSA, Dr. Juan Manuel Sanchez (Associate Dean of the Carlos Alvarez College of Business), and Dr. Harrison Liu (Ph.D. Advisor) under Title VII of the Civil Rights Act of 1964 ("Title VII"),  the Age Discrimination in Employment Act of 1967 ("ADEA"), 42 U.S.C. § 1983 ("Section 1983"), and a criminal statute, 26 U.S.C. § 7206.  Ms. Lan's Original Complaint alleged that she was employed as a research assistant and Ph.D. student at UTSA and faced discrimination based on her race, national origin, gender, and age.  Ms. Lan further complained that she was wrongfully terminated from her position at UTSA based on unsatisfactory performance on a comprehensive exam, after being subjected to discriminatory grading by Dr. Sanchez.   The undersigned construed Ms. Lan's Original Complaint as arising only under Title VII and the ADEA in an early report and recommendation reviewing the pleading under 28 U.S.C. § 1915, as there is no private right of action under the criminal statute and Ms. Lan did not include any allegations in her Complaint that could support a due process violation under Section 1983.  The undersigned therefore limited service of Ms. Lan's Complaint to UTSA, as Title VII and the ADEA do not provide for individual liability, and recommended the District Court dismiss BIT, Dr. Sanchez, and Dr. Liu from the lawsuit [#9].

Several weeks after the Court docketed Ms. Lan's Original Complaint and issued a summons for service on UTSA, she filed an Amended Complaint (titled "Second Amended Complaint") [#13].  The Second Amended Complaint again named UTSA and Drs. Liu and Sanchez but removed BIT from the pleading.  This amended pleading asserted claims under Title VII and the ADEA and removed any reference to the Due Process Clause or criminal statutes.

Ms. Lan also filed an objection to the undersigned's report and recommendation [#14], arguing that Dr. Sanchez and Dr. Lui should not be dismissed from this lawsuit because they breached their duties as educators in violation of the Texas Educators' Code of Ethics in grading her exam and in treatment of Ms. Lan and other students.

UTSA was served with process and filed a motion to dismiss the Second Amended Complaint.  In response, Ms. Lan, without seeking leave of Court, filed another Amended Complaint (titled "Third Amended Complaint") [#21].  UTSA moved to dismiss the Third Amended Complaint.  The Third Amended Complaint also named UTSA, Dr. Sanchez, and Dr. Liu as Defendants.  The claims asserted in this pleading against UTSA were claims for race, color, gender, religion, and national origin discrimination and retaliation under Title VII.  The Third Amended Complaint also alleged claims for "breach/negligence of duty" and making a "false statement and misrepresentation," which the undersigned construed as claims asserted against Dr. Sanchez and Dr. Liu.  Ms. Lan also referenced a hostile work environment, which the undersigned construed as a Title VII hostile work environment claim against UTSA.  Ms. Lan did not mention the ADEA in this pleading.  Ms. Lan's factual description of the basis of her claims reiterated her previous allegation that she was wrongfully terminated from her Ph.D. program due to discrimination.  Although Ms. Lan concedes she was terminated after she failed her comprehensive exam multiple times, Ms. Lan contends she was scrutinized at a higher level for discriminatory reasons in the grading of her examinations.

The Court dismissed UTSA's first motion to dismiss as moot in light of the filing of Ms. Lan's Third Amended Complaint, and Ms. Lan filed a response in opposition to the second motion to dismiss as ordered by the Court [#25], as well as a second motion to appoint counsel. The undersigned issued a report and recommendation on April 24, 2023, recommending the

District Court grant the second motion to dismiss in part, dismiss with prejudice Ms. Lan's hostile work environment claim and her Title VII claims of discrimination based on race, color, gender, and religion, but allow Ms. Lan's Title VII national origin discrimination and retaliation claims to proceed [#33].  The undersigned also recommended that the District Court decline to exercise supplemental jurisdiction over Ms. Lan's state-law claims against Dr. Sanchez and Dr. Liu.

Immediately thereafter, the undersigned granted the motion to appoint counsel and appointed an attorney to represent Ms. Lan [#34].  Ms. Lan, through counsel, filed a motion for leave to amend her pleadings a third time to add claims under Title VI and Title IX of the Civil Rights Act of 1964.  Thereafter, irreconcilable differences between Ms. Lan and her appointed counsel arose, and (with Ms. Lan's consent) the Court allowed appointed counsel to withdraw [#47].  The undersigned granted the motion for leave to amend in part [#54], allowing Ms. Lan to file a final amended pleading including a cause of action for national origin discrimination and retaliation under Title VI, as these claims related to Ms. Lan's remaining claims under Title VII.  The undersigned, however, did not permit Ms. Lan to add claims for race discrimination and retaliation under Title VI, or claims regarding a hostile work environment under either statute.

Ms. Lan timely filed her Fourth Amendment Complaint, which was drafted *pro se* and which also named UTSA and Dr. Sanchez and Dr. Liu as Defendants [#57].  UTSA responded with another motion to dismiss [#59], seeking dismissal of Ms. Lan's remaining claims of national-origin discrimination and retaliation under Title VI and Title VII.  After the motion to dismiss was filed, the parties filed the three motions for summary judgment currently pending before the Court.  Because these motions raise the same arguments addressed in Defendant's

motion to dismiss the Fourth Amended Complaint, but are supported by evidence, the Court dismissed the motion to dismiss as superseded by the summary judgment motion.[1]

The District Court thereafter adopted the undersigned's report and recommendations [#9, #33], which resulted in the dismissal of Dr. Sanchez, Dr. Liu, and BIT from this case pursuant to 28 U.S.C. § 1915(e) [#64] and the dismissal of Ms. Lan's Title VII hostile work environment and discrimination claims based on race, color, gender, and religion [#65]. The District Court also followed the undersigned's recommendation and declined to exercise supplemental jurisdiction over the state-law claims asserted against Dr. Sanchez and Dr. Liu and dismissed all state-law claims without prejudice to refiling in state court. In light of the District Court's rulings and the filing of the Fourth Amended Complaint, the only remaining causes of action are Ms. Lan's claims of national origin discrimination and retaliation under Title VI and Title VII against UTSA.

Ms. Lan's motion for partial summary judgment [#67] asks the Court to enter summary judgment on her retaliation claims under Title VI and Title VII, arguing that the summary

---

[1] The only issue raised in the motion to dismiss that is not addressed in the summary judgment motions is the issue of exhaustion of administrative remedies. In the motion, UTSA argued that Ms. Lan failed to exhaust her administrative remedies as to any acts occurring before August 19, 2021, as Ms. Lan filed her EEOC Charge on June 15, 2022 (EEOC Charge [#18-1]), and a charge must be filed within 300 days of the alleged adverse employment action about which a party is complaining. *See* 42 U.S.C. § 2000e-5(e)(1). By this argument, UTSA was attempting to prevent the Court from considering an alleged comment by Dr. Sanchez made in January 29, 2020, regarding Ms. Lan's national origin. This argument is without merit. Ms. Lan has never alleged that the comments made by Dr. Sanchez constitute a separate and discrete act of unlawful discrimination but rather that Dr. Sanchez's comments are evidence of the discriminatory intent behind her dismissal from the Ph.D. program and termination. These adverse events fell within the 300-day period prior to Ms. Lan's filing of her EEOC charge, and the Court may consider Dr. Sanchez's "prior acts as background evidence in support of [Ms. Lan's] timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Regardless, the Court need not reach this argument because the Court is recommending summary judgment be entered in UTSA's favor on other grounds.

judgment evidence establishes that Ms. Lan engaged in protected activities and UTSA rejected her request for reinstatement in retaliation for those activities.  UTSA's motion for summary judgment [#83] seeks summary judgment on all of Ms. Lan's remaining claims.  Ms. Lan's second motion for summary judgment asks the Court to enter summary judgment on both her discrimination and retaliation claims [#84].  The parties have filed responses and replies to the cross motions for summary judgment [#72, #74, #87, #88, #89], and the motions are ripe for the Court's review.    Although Ms. Lan's two summary judgment motions are duplicative, the undersigned has considered the arguments and evidence attached to both motions in making a recommendation on the merits of Ms. Lan's remaining claims.

Ms. Lan also filed an "Advisory" [#90], arguing that the Court should resolve the summary judgment motions in her favor.    UTSA moves to strike the Advisory as an impermissible additional response to UTSA's motion for summary judgment filed without leave of Court.  The Court will deny the motion.  The undersigned has reviewed the Advisory, and all of the evidence attached to the Advisory has already been provided to the Court in conjunction with other filings.  Additionally, the arguments made by Ms. Lan in the Advisory are included in her other filings, namely the reply that she filed on December 3, 2023 [#89].  Ms. Lan's reply is not addressed in UTSA's motion to strike, and the undersigned declines to *sua sponte* strike that filing (even if it could be construed as a sur-reply filed without leave of Court).

Finally, Ms. Lan has filed three motions to expedite the case, asking the Court to issue a ruling.    The undersigned will dismiss the motions as moot in light of this report and recommendation addressing the merits of the parties' cross motions for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

The Fifth Circuit has held that a plaintiff's *pro se* status does not relieve her of the duty to properly support a response to motions for summary judgment.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).  The Rules of Civil Procedure and this Court's Local Rules are sufficient to apprise a *pro se* Ms. Lan of the potential consequences of failing to submit competent summary judgment proof, such as opposing declarations or affidavits; no additional particularized notice is required.  *Id.*

### III.  Summary Judgment Record

The summary judgment record establishes the following facts, which are undisputed unless otherwise noted.  Ms. Lan was a candidate for a Ph.D. in the Accounting Department of UTSA's Carlos Alvarez College of Business.  In July 2021, Ms. Lan took the written portion of the Ph.D. Comprehensive Qualifying Examination, which is administered after a student completes all required course work and before the student is permitted to officially commence dissertation research.  (College of Business Outline [#83-2], at 32.)  The written component of the exam consists of five sections.  (Aug. 4, 2021 Ltr. [#83-2], at 4.)  The first day of the written exam is a question-and-answer session involving four sections.  (E-mail [#83-2], at 10.)  The second day of the written exam is a paper critique session.  (E-mail [#84-8], at 1.)  Each section is assessed by a team of at least two graders and assigned a grade of Exceptional, Satisfactory, Marginal, Unsatisfactory, or Fail.  (Aug. 4, 2021 Ltr. [#83-2], at 4; Grading Scheme [#83-2], at 27.)  A grade of Unsatisfactory or lower on two or more sections of the written component results in a failing grade on the exam.  (Grading Scheme [#83-2], at 27.)  A Ph.D. candidate with a failing grade is permitted to take a second qualifying exam within 90 days.  (College of Business Outline [#83-2], at 33.)  According to UTSA's College of Business curriculum, a

student failing the exam a second time will be deemed to be making unsatisfactory process and will be dismissed from the Ph.D. program. (*Id.*)

Ms. Lan received an Unsatisfactory assessment on two of the five sections of the July 2021 written exam—Section 2 on Financial Accounting Theory and Section 4 on Archival-Based Research Methods. (Aug. 4, 2021 Ltr. [#83-2], at 5; Exam Results [#83-2], at 29.) The other two Ph.D. students taking the exam at the same time as Ms. Lan received passing grades. (E-mail [#83-2], at 26.) On August 4, 2021, Dr. Liu informed Ms. Lan of the results of her exam and the requirement that she retake all sections of the written component of the exam pursuant to UTSA policy. (Aug. 4, 2021 Ltr. [#83-2], at 4–5.)

Despite her failing grade on the first exam, Ms. Lan was appointed as a Graduate Research Assistant on August 9, 2021, by Mr. Sanchez, the Associate Dean of Graduate Studies and Research. (Appointment [#67-1], at 1.) According to the Memorandum of Appointment, Ms. Lan would work 20 hours per week for the fall semester and would be compensated with $25,000.00 in stipend wages for the 12 month-period from September 1, 2021, to August 31, 2022, and with a $4,000.00 one-time supplemental award and $15,000.00 in tuition and fees. (Appointment [#67-1], at 1.)

Ms. Lan's theory of her discrimination claims is that she was subjected to discriminatory grading due to her national origin. The record establishes that at least two instructors grade each exam section, and Dr. Sanchez and Dr. Cheryl Linthicum graded Sections 2 and 4 of Ms. Lan's first written exam. (Grading Scheme [#83-2], at 27; E-mails [#83-2], at 8–23.) In addition to Dr. Sanchez and Dr. Linthicum, the following additional professors were involved in grading the comprehensive exams in July 2021: Dr. Jeff Boone, Dr. Emeka Nwaeze, Dr. Jennifer Yin, Dr. KK Raman, and Dr. Sharad Asthana (Chair of the Department of Accounting). (*Id.*) Grading is

designed to be anonymous.  (E-mails [#83-2], at 8.)  The  answers of the three Ph.D. students taking the July exam were marked D, E, and F to preserve anonymity.  (*Id.*)  Ms. Lan's exam was Exam D.  (*Id.* at 11.)

Ms. Lan argues that the professors knew her exam was Exam D.  The summary judgment record establishes that Dr. Boone unintentionally sent an e-mail to all the professors responsible for grading stating that he was recused from grading Ms. Lan's exam and asking that her exam be identified.  (*Id.* at 10.)  Dr. Boone had intended to send the e-mail only to Dr. Liu (who was assigning grading responsibilities), but inadvertently sent the e-mail "reply all."  (*Id.*)  Dr. Liu responded to Dr. Boone alone, indicating that Dr. Boone could grade the exams of students E and F (implying that Ms. Lan's exam was Exam D).  (*Id.* at 11.)  Realizing his mistake, Dr. Boone sent an e-mail to Dr. Liu saying, "Harrison, looks like I really screwed up and sent the recusal email to everyone."  (*Id.* at 19.)  Dr. Liu and Dr. Boone then decided that they could still preserve anonymity by Dr. Boone sending his exam grades to Dr. Liu, who would in turn send all three students' grades to Dr. Sanchez.  (*Id.* at 23.)  Ms. Lan testified in her deposition that she believed Dr. Sanchez was aware that he was grading her exam because Dr. Boone's recusal required him to grade both Section 2 and 4 of her exam (whereas Dr. Boone graded Section 2 for the other two students), and the two sections were in the same answer document.  (Lan Dep. [#83-3], at 84:22–87:9.)  Additionally, an email dated July 12, 2021, from Dr. Asthana to Dr. Liu states that he could see the name of student D when he opened the PDF file of her exam responses for the second day of the written exam.  (E-mail [#84-8], at 1.)

After Ms. Lan failed the first exam, she received feedback from Dr. Sanchez and Dr. Linthicum on the deficiencies of her answers in preparation for the second written exam.  (Sanchez Feedback [#83-2], at 37; Linthicum Notes [#83-2], at 40.)  Dr. Sanchez's notes state

that Ms. Lan's answers were unclear, underwhelming, boiler plate, only mildly convincing, sloppy, and confusing.  (Sanchez Feedback [#83-2], at 37.)  Dr. Linthicum met with Ms. Lan on August 19, 2021, to go over her exam and explain the reasons for her failing grade.  (Linthicum Notes [#83-2], at 40.)  Ms. Linthicum's notes from the meeting indicate that Ms. Lan's answers were inadequate because the questions were not completely answered and only parts of each question were addressed in the answers.  (Linthicum Notes [#83-2], at 40.)

Ms. Lan took the second comprehensive exam in September of 2021.  (Aug. 4, 2021 Ltr. [#83-2], at 6.)  As she was the only student taking the second exam, grading for this exam could not be blind.  (E-mail [#83-2]. at 45.)  Dr. Sanchez and Dr. Linthicum again graded Sections 2 and 4 of Ms. Lan's exam.  (E-mails [#83-2], at 44–63.)  Dr. Liu directed the professors to grade Ms. Lan's re-take according to comprehensive examination grading procedures.  (*Id.* at 45.)  Both Dr. Sanchez and Dr. Linthicum assessed Ms. Lan with an Unsatisfactory score on Section 2.  (E-mail [#83-2], at 44, 50.)  Dr. Sanchez assessed Ms. Lan with an Unsatisfactory score on Section 4; Dr. Linthicum assessed Ms. Lan with a Failing score on Section 4.  (E-mail [#83-2], at 44, 59.)  Ms. Lan received an overall score of Marginal on Sections 1 and 3, Unsatisfactory on Section 2, and Unsatisfactory/Fail on Section 4.  (E-mail [#83-2], at 6.)  Accordingly, because Ms. Lan failed both exams, on October 13, 2021, Dr. Asthana informed Ms. Lan that the Accounting Ph.D. Program Committee had recommended her dismissal based on her unsatisfactory performance.  (*Id.*; Grievance Mem. [#67-2].)  The Department followed the committee's recommendation and dismissed Ms. Lan from the Ph.D. program.  (E-mail [#83-2], at 6.)

In response, Ms. Lan initiated an academic grievance and filed a formal discrimination complaint with Equal Opportunity Services ("EOS") in November 2021.  (E-mail [#67-2], at 3.)

EOS conducted an investigation and concluded there was no evidence of discrimination as to the grading of Ms. Lan's comprehensive exam.  (Correspondence [#67-1], at 21.)  Dr. Asthana issued a Memorandum on December 29, 2021, as to the academic grievance, finding no evidence of differential treatment and that Ms. Lan's academic and grade grievance was without merit. (Memo. [#67-1], at 25.)

Ms. Lan thereafter submitted a request for reinstatement to the Ph.D. program on January 25, 2022, citing the following bases for reinstatement to the Ph.D. program: (1) personal illness or accident; (2) illness, accident, or death of family members; and (3) no utilization or unaware of academic resources.  (Meeting Minutes [#67-3], at 39.)  The Ph.D. Committee met on March 4, 2022, to review the petition.  (Correspondence [#67-3], at 27.)  Dr. Sanchez, Dr. Liu, Dr. Yin, Dr. Raman, Dr. Boone, Dr. Nwaeze, and Dr. Asthana were members of the committee.  (Meeting Minutes [#67-3], at 39.)   The committee unanimously rejected Ms. Lan's petition for reinstatement, and Ms. Lan was informed of the decision on March 24, 2022.   (*Id.*; Recommendation [#67-3], at 55; Ltr. [#67-3], at 60.)  Ms. Lan timely filed a complaint with the EEOC, alleging national origin discrimination based on discriminatory grading, and the EEOC issued a right to sue letter on July 6, 2022.  (Correspondence [#67-1], at 2.; Right to Sue [#67-1], at 5.)

## IV.  Analysis

By their cross motions for summary judgment, Ms. Lan and UTSA each move for summary judgment on the remaining claims of national origin discrimination and retaliation under Title VI and Title VII.  Ms. Lan claims that UTSA subjected her to heightened scrutiny in the grading of her final exams because she is Chinese and that the decision to deny her application for readmission was in retaliation for internal grievances filed with UTSA regarding

this alleged discrimination.  For the reasons that follow, the Court should grant UTSA summary judgment on both the discrimination and retaliation claims.

**A.     UTSA is entitled to summary judgment on Ms. Lan's national origin discrimination claims under Titles VI and VII.**

Title VII prohibits an employer from discriminating against or discharging an employee on account of the employee's national origin.  42 U.S.C. § 2000e–2(a)(1).  Title VI of the Civil Rights Act of 1964 similarly prohibits organizations receiving federal financial assistance from discriminating based on national origin.  42 U.S.C. § 2000d.

The court's inquiry into national-origin discrimination and retaliation "is essentially the same for individual actions brought under . . . Title VI and Title VII."  *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 904 (S.D. Tex. 2007) (quoting *Baldwin v. Univ. of Tex. Medical Branch at Galveston*, 945 F. Supp 1022, 1031 (S.D. Tex. 1996), *aff'd* 122 F.3d 1066 (5th Cir. 1997)).  Accordingly, the Court analyzes Ms. Lan's Title VI and Title VII discrimination claims under Title VII's governing standards.

Discrimination claims under Title VII may be brought using either direct or circumstantial evidence.  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  Ms. Lan argues that there is direct evidence of discrimination in this case because Dr. Sanchez allegedly told Ms. Lan in January of 2020 that he "puts Chinese students at bottom (sic) of his list because of poor communication."  Ms. Lan does not identify any competent summary judgment evidence in the record that supports her assertion that Dr. Sanchez said this.  Regardless, the undersigned agrees with UTSA that, even assuming Dr. Sanchez made this remark, this isolated comment from January 2020 does not constitute direct evidence of discriminatory grading by Dr. Sanchez in July and September 2021.

To establish national origin discrimination using workplace remarks as direct evidence, a plaintiff must show that the remarks: (1) relate to the plaintiff's national origin; (2) were proximate in time to the adverse employment decision; (3) were made by an individual with authority over that decision; and (4) relate to that decision. *See Crisp v. Sears Roebuck & Co.*, 628 Fed. App'x 220, 222 (5th Cir. 2015). There is no summary judgment evidence before the Court establishing that Dr. Sanchez's remark, if made, was made proximate in time to the alleged discriminatory grading or dismissal of Ms. Lan from the Ph.D. program or related to these decisions. A period of almost 18 months elapsed between the alleged discriminatory remark in January of 2020 and the grading of Ms. Lan's first exam in July 2021. The remarks were therefore not proximate in time to the adverse decisions at issue. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (finding age-based comment made one year before the plaintiff's termination as too remote to constitute direct evidence of discrimination); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (stating that where comments "are vague and remote in time" they are insufficient to establish discrimination); *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that a comment made nearly a year before the adverse employment decision that appeared unrelated to the decision was a stray remark).

The next question therefore is whether Ms. Lan has presented adequate circumstantial evidence to survive UTSA's motion for summary judgment. When establishing national origin discrimination by circumstantial evidence, the Court applies the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). To prove discrimination in violation of

Title VII, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action, such as termination of her employment; and (4) she was replaced with someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.  *Id.* at 556–57.  The analysis is the same for a Title VI claim except that the third element requires merely an "adverse action" rather than "adverse employment action."  *See, e.g.*, *Bisong*, 493 F. Supp. 2d at 906.

Once a plaintiff makes out a prima facie case of discrimination under Title VII, she is entitled to a presumption of discrimination, which the defendant may rebut by presenting a legitimate nondiscriminatory reason for its actions.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  The employer's burden is merely one of production, not persuasion, and no credibility assessments occur at this stage.  *Id.*  If the defendant succeeds in rebutting the presumption, the plaintiff must establish that the defendant's proffered reason for its action is pretextual—either by showing the employer's proffered reasons are false or that another motiving factor is the protected class.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).  To carry that burden, the plaintiff must produce substantial evidence of pretext:

"Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient."  *Auguster*, 249 F.3d at 403 (internal citation and quotation omitted).  This court has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief.  *Id.* (internal citation and quotation omitted).

UTSA argues Ms. Lan cannot prove a *prima facie* case of national origin discrimination because she was never an employee of UTSA and she cannot show she was treated less favorably than other similarly situated, non-Chinese students.  UTSA is not entitled to summary judgment on the basis that Ms. Lan was not employed by UTSA.  The summary judgment record contains Ms. Lan's "Memorandum of Appointment," reflecting that she was to receive wages in the form of a stipend.  (Appointment Mem. [#84-1], at 1.)  Dr. Liu referred to Ms. Lan as "eligible for employment" as a research assistant in correspondence with the Department. (Correspondence [#84-1], at 5.)  UTSA argues that the decision in *Washington v. Jackson State University*, 532 F. Supp. 2d 804, 811 (S.D. Miss. 2006), compels the conclusion that Ms. Lan was not an employee of UTSA.  That one district court from Mississippi has held that a graduate research assistant is not an employee under Title VII does not establish Ms. Lan's employee status as a matter of law.  The Mississippi court did not cite any authority other than the language of Title VII requiring employee status in support of its holding.  Moreover, there are some circumstances in which courts have found a graduate research assistant to be an employee for purposes of Title VII.  *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234–35 (11th Cir. 2004) (applying economic-realities test to hold that plaintiff's lab work was performed as an employee of the university, rather than primarily for purposes of his graduate program, and collecting other cases finding same).

However, the undersigned agrees with UTSA that Lan has not provided the Court with sufficient evidence from which a reasonable jury could conclude she was treated less favorably than other non-Chinese students who were similarly situated Ph.D. students.  Again, Ms. Lan alleges that Dr. Sanchez graded her more harshly than non-Chinese students by giving her a failing grade on her exams.  The summary judgment record establishes that Ms. Lan received an

unsatisfactory assessment on Sections 2 and 4 on both the July and September 2021 exams, resulting in a failing grade on both exams, whereas the other two Ph.D. students passed the exam.  (Exam Results [#83-2], at 6, 29.)  The record does not contain identifying information for the other two students or their national origin, but Ms. Lan asserts they were not Chinese.  (Lan Dep. [#83-3], at 85:3–17.)  These two students were both given either a satisfactory or marginal assessment by Dr. Sanchez on Sections 2 and 4 of the July 21 exam.  (Exam Results [#83-2], at 29.)  All this establishes, however, is that the students received different grades, not that their answers were similarly situated such that they should have received the same treatment and grading assessment.  The fact that the other two students passed the exam, without more, does not evidence that the three students were similarly situated with respect to their exam answers such that receiving different grades constituted differential treatment.  Moreover, Ms. Lan was the only student to retake the comprehensive exam, so she cannot show that she was treated differently than non-Chinese students in the grading of her September 2021 exam.

Nonetheless, assuming Ms. Lan could establish her *prima facie* case entitling her to a presumption of discrimination, her claims still fail as a matter of law because UTSA has proffered a non-discriminatory reason for giving Ms. Lan a failing grade—unsatisfactory performance—and Ms. Lan has not produced sufficient evidence of pretext.  The record establishes that Ms. Lan's initial comprehensive examination was administered in accordance with the policies set forth in the doctoral program handbook and was graded by two independent graders.  (Grading Scheme [#83-2], at 27.)  The re-test was "very similar in terms of content, complexity, weight, and even language" compared with the original questions.  (E-mails [#83-2], at 42.)  By receiving grades of Unsatisfactory or worse on two sections of the exam, Ms. Lan failed the exam, in accordance with established grading standards.  The record contains notes

from both Dr. Sanchez and Dr. Linthicum detailing the deficiencies in Ms. Lan's exam answers. (Sanchez Feedback [#83-2], at 37; Linthicum Notes [#83-2], at 40.)  This Court is not suited to second guess the academic decisions of Ms. Lan's professors, and the Court declines to wade into the reasons provided by Dr. Sanchez and Dr. Linthicum for Ms. Lan's failing grades.  *See Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 198–99 (1990) (emphasizing that universities may use any criteria they wish to evaluate professors except those proscribed under Title VII and that courts must avoid "second-guessing of legitimate academic judgment"); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment."); *Patel v. Tex. Tech Univ.*, 941 F.3d 743, (5th Cir. 2019) (emphasizing the "exceedingly narrow scope for judicial review of academic decisions").  Ms. Lan may disagree with the academic substance of these decisions, but she has not provided substantial evidence that her failing grades were pretext for national origin discrimination.

Ms. Lan attempts to show discriminatory grading through the failure of the Department to preserve blind grading of her exam.  Yet even assuming anonymity was breached in the grading of Ms. Lan's exam, this is not evidence from which a reasonable jury could conclude that Dr. Sanchez engaged in discrimination in grading because of Ms. Lan's national origin.  First, the e-mail from Dr. Ashtana to Dr. Liu that he could see the name of student D (Ms. Lan) when he opened the PDF file of her exam response is irrelevant to Ms. Lan's theory of discrimination.  Dr. Asthana is not accused of engaging in discriminatory grading, and his e-mail concerned the second day of the written exam, which was not the day on which Sections 2 and 4 were administered.  (E-mail [#84-8], at 1.)  Ms. Lan received a satisfactory assessment on Section 5, which was the only section tested on the second day of the exam.  (Grading Results [#83-2], at

29.)  Second, Dr. Sanchez was not the only professor evaluating Ms. Lan's answers on Sections 2 and 4 of the exam in January or September 2021.  Dr. Linthicum graded both of Ms. Lan's exams and also assessed Ms. Lan with an unsatisfactory or failing score on both sections both times.  (E-mail [#83-2], at 44.)  Ms. Lan testified in her deposition that she had no reason to believe that Dr. Lithicum would have been unfair in her grading.  (Lan Dep. [#83-3], at 51:20–25.)  The consistency between Dr. Sanchez's and Dr. Linthicum's assessment significantly undermines Ms. Lan's theory of intentional discrimination.

This leaves only the circumstantial evidence of Ms. Lan's allegation that Dr. Sanchez made a remark about putting Chinese students "at bottom of his list because of poor communication" and then, almost 18 months later, gave Ms. Lan a failing grade on the comprehensive exam.  This comment, without more, is not substantial evidence of pretext such that a jury could infer that Dr. Sanchez's academic assessment of Ms. Lan was pretext for discrimination due to her national origin.  Multiple professors agreed with Dr. Sanchez's assessment of Ms. Lan's exams.  Ms. Lan's subjective belief that she was targeted by discriminatory grading is insufficient to warrant judicial relief.  *Auguster*, 249 F.3d at 402–03.  Accordingly, UTSA is entitled to summary judgment on Ms. Lan's discrimination claims under Title VI and Title VII.

**B.    UTSA is also entitled to summary judgment on Ms. Lan's retaliation claims.**

Title VI and Title VII also prohibit retaliation against any individual who engages in protected activity, such as complaining of discriminatory behavior or assisting in an investigation of such behavior.  42 U.S.C. § 2000e–3(a); 34 C.F.R. § 100.7(e).  To establish a *prima facie* case of retaliation, Ms. Lan must prove that (1) she participated in activity protected by Title VII, (2) UTSA took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action.  *McCoy*, 492 F.3d at 556–57.

19

"Title VII [and Title VI] retaliation claims must be proved according to traditional principles of but-for causation," not the lessened causation test applicable to status-based discrimination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  A "protected activity" for the purposes of a retaliation claim includes any opposition to any practice rendered unlawful by Title VI or Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.  *Ackel v. Nat'l Commc'n Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

Ms. Lan undisputably engaged in protected activity by filing an internal complaint with EOS in November 2021 after she was dismissed from the Ph.D. program.  (Ms. Lan also alleges in her pleadings that she filed complaints with the EEOC in December 2021, January 2022, March 2022, and June 2022.  These later complaints post-dated the denial of her reinstatement petition and therefore are not relevant protected activity.)  Yet Ms. Lan has not presented any evidence establishing a causal connection between her protected activity and the denial of her petition for reinstatement to the program in March of 2022.

First, Ms. Lan has not produced evidence showing that the members of the committee who voted to deny Ms. Lan's petition for reinstatement were even aware of her protected activities.  "Demonstrating that a decisionmaker was aware of an employee's protected activity certainly requires 'more than mere curious timing coupled with speculative theories.'"  *See Equal Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (quoting *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)).  Second, even if the entire committee were aware of Ms. Lan's protected activities, there is simply no evidence that would

establish that the committee's decision was based in any way on Ms. Lan's protected activities. Mere speculation is insufficient to establish a genuine issue of fact.

Third, while temporal proximity can sometimes be sufficient to establish a *prima facie* case of retaliation, that proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). Almost five months elapsed between the filing of Ms. Lan's EOS complaint in November 2021 and the decision to deny her request for reinstatement in March 2022. If the Court considers the January EEOC complaint, almost three months elapsed. This is too distant a temporal relationship to establish the causal connection required for a *prima facie* case of retaliation on its own. *See Winchester v. Galveston Yacht Basin*, 943 F. Supp. 776, 781 (S.D. Tex. 1996) ("It is undisputed that [the plaintiff] was discharged a few weeks after angrily complaining about her not receiving a raise, but the Court finds this proximity in time insufficient to establish a causal connection."), *aff'd* 119 F.3d 1 (5th Cir. 1997); *see also Meyers v. Crestone Int'l, LLC*, 121 Fed. App'x 25, 28 (5th Cir. 2005) (per curiam) (approximate three-month gap did not, by itself, create a causal link).

In summary, there is no evidence that "but for" Ms. Lan's internal and external complaints, the Ph.D. Committee would have reinstated her to the program despite her repeated failure to pass the written portion of the comprehensive exam. The Fifth Circuit has "consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C. v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).

21

## IV.  Recommendation and Orders

After considering the parties' motions, the responses and replies thereto, Ms. Lan's pleadings, the summary judgment record, and the governing law, the undersigned hereby **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Partial Summary Judgment [#67] and Plaintiff's Motion for Summary Judgment [#84] and that the District Court **GRANT** Defendant the University of Texas at San Antonio's Motion for Summary Judgment [#83].

**IT IS ALSO HEREBY ORDERED** that Defendant the University of Texas at San Antonio's Motion to Strike [#91] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Expedite the Case [#92, #93, #94] are **DISMISSED AS MOOT**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party

from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 21st day of May, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE